STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, ss.
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-021
TEH-CUM- 12/14/2004

2004 DEC 14 A 8: 28

PORTLAND POLICE BENEVOLENT ASSOCIATION
and MAINE ASSOCIATION OF POLICE,

Petitioners,

v.

DECISION AND ORDER

CITY OF PORTLAND,

Respondent.

DEC 27 2004

This matter is before the court on the petitioners' Rule 80B appeal from the decision of the respondent City of Portland denying the petitioners' request to provide them with a copy of the McClaran Report, so-called, concerning operations within the Portland Police Department (Department). The parties have largely stipulated to the facts and circumstances leading to the creation of the McClaran Report, and the petitioners' subsequent request for its release.

BACKGROUND

In January of 2002, the City of Portland reached a substantial settlement with an individual who had brought a lawsuit against the City for civil rights violations. That lawsuit, the settlement and the negative media attention they generated had a significant impact on the morale of the Department as well as on the public's perception of the Department. In an effort to address those concerns, Chief of Police Michael Chitwood implemented a number of organizational changes within the Department and requested a review by the Federal Department of Justice (FDOJ). Chief Chitwood also decided to conduct a local independent review of the Department.

1

To that end, Chief Chitwood consulted with William McClaran, Ph.D. a former chief of police and noted law enforcement expert. Dr. McClaran was asked to investigate and prepare a report concerning the operations of the Department. Dr. McClaran did not work for the City and was not paid for his work on the report. Dr. McClaran also agreed to conduct education sessions for Portland police officers that would address a variety of issues, including officer morale, Departmental changes and personnel problems. Officials in the Department subsequently issued a mandatory order requiring members of the petitioning associations to meet with Dr. McClaran, who began meeting with small groups of officers in February 2002.

At the request of the participating officers and with Chief Chitwood's consent, the meetings with Dr. McClaran were conducted anonymously. The officers were paid their normal wages for the time they participated in the interviews. After the interviews were completed, Chief Chitwood met with Dr. McClaran regarding the substance of the officers' concerns and asked Dr. McClaran to produce a memorandum detailing the issues raised by the officers, as well as possible solutions. Chief Chitwood contacted the Department's attorney, BethAnne Poliquin, and discussed Dr. McClaran's findings with her.

Chief Chitwood received Dr. McClaran's report on or about March 8, 2002. The report did not contain the names of the officers who attended the meetings but did contain comments by the officers about the behavior, conduct and performance in their jobs of Chief Chitwood, Deputy Chief William Ridge, and Attorney Poliquin. Chief Chitwood first shared the content of the McClaran Report verbally with City Manager Gray on March 29, 2002 and provided Gray with a written copy of the Report in early April 2002. The Chief also shared the written report with five other people: Poliquin, Ridge, City Corporation Counsel Gary Wood, and the City's Human Resources Director Gloria Thomas. Chief Chitwood did not take any formal disciplinary

action in response to the report. He did, however, change the duty assignment of Deputy Chief Ridge in the form of a lateral transfer to the Criminal Investigations Division.

The petitioners subsequently requested a copy of the report and allege that at some point in late March or early April 2002, City Manager Gray verbally promised to provide a copy to the petitioners. The respondent denies that Gray ever made such a promise. By January 28, 2003 the petitioners had not received a copy of the report and their attorney wrote to City Manager Gray requesting a copy pursuant Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. §§401-410 (1989 & Supp. 2003) , and citing Gray's alleged promise to turn over a copy of the report in its entirety. On February 4, 2003 the attorney for the City informed the petitioners' counsel by letter that the petitioners' request was denied.

This appeal follows that denial and is grounded on the petitioners' claims (1) that the McClaran Report is a "public record" within the meaning of the FOAA, 1 M.R.S.A. § 402(3), and does not fall within the public record exceptions provided by either 30-A M.R.S.A. §§ 2702(5) or 2702(2) (1996 & Supp. 2003); and (2) that the respondent breached an implied contract to provide the petitioners with a copy of the report.

## DISCUSSION

A.    Freedom of Access Act

There is a strong preference under FOAA for making public records available to the public. See 1 M.R.S.A. §§ 401-410.[1] The preamble to the Act illustrates the Legislature's belief

---

[1] In relevant part, the Act provides that

> Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record; provided that, whenever inspection cannot be accomplished without translation of mechanical or electronic data compilations into some other form, the person desiring inspection may be required to pay the State in advance the cost of translation and both translation and inspection may be scheduled to occur at such time as will not delay or inconvenience the regular activities of the agency or official having

that "public proceedings exist to aid in the conduct of the people's business. It is [therefore] the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly." 1 M.R.S.A. § 401. The definition of what constitutes a "public record" is very broadly defined and liberally construed. *See* 1 M.R.S.A. §§ 401 & 402. Further, Maine courts have held that a public entity, whose records have been requested under the Act, bears the burden of proof to show "'just and proper cause' for the denial of the Freedom of Access Act request." *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 9, 754 A.2d 353, 356.

B.      Statutory Exceptions – 30-A M.R.S.A. § 2702

There are several categories of records that are not considered "public records" under the FOAA and, thus, are excepted from the Act's public access requirements. 30-A M.R.S.A. §2702.[2] The respondent bases its arguments in opposition to the release of the McClaran Report on the statute's exceptions for "performance evaluations" and "complaints … that may result in disciplinary action". 30-A M.RS.A. § 2702(B)(2) & (5). The court will address the applicability of each of these exceptions in turn, but begins with an analysis of subsection 5,

---

custody of the record sought and provided further that the cost of copying any public record to comply with this section shall be paid by the person requesting the copy.
1 M.R.S.A. § 408.

[2] Section 2702's list of excepted documents includes:
    B. Municipal records pertaining to an identifiable employee and containing the following:
        (2) Performance evaluations and personal references submitted in confidence;
            ****
        (5) Complaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action. If disciplinary action is taken, the final written decision relating to that action is no longer confidential after the decision is completed if it imposes or upholds discipline.
*Id.*

4

because that is the section upon which the respondent initially relied in February of 2003 and because the petitioners have raised objections to the validity of the respondent's reliance on subsection 2 as a new justification for its denial of the request.

(1)     Section 2702(1)(B)(5)

The respondent argues, first, that the McClaran Report is a "[m]unicipal record pertaining to an identifiable employee" that contains "[c]omplaints, charges or accusations of misconduct ... that may result in disciplinary action," and that the purpose of the exceptions contained in section 2702 is to protect the privacy of municipal employees who are the subject of complaints or charges that can damage their reputation until such time that discipline is in fact instituted. The respondent further contends that only when disciplinary action is taken are the final reports of that action made publicly accessible.

According to the respondent, the complaints and accusations made by the unnamed police officers to Dr. McClaran regarding Chitwood, Poliquin and Ridge, were of the sort contemplated by section 2702(1)(B)(5) and, because they did not result in disciplinary action, the complaints as well as the report enumerating them, should not be released. In addition, the respondent argues that, insofar as the process under which the officers lodged their complaints to Dr. McClaran was not in accordance with the usual processes under which the Department fields complaints and accusations, that distinction does not render the complaints unable to "result in disciplinary action."

The petitioners, on the other hand, argue that the alleged "misconduct" on the part of Chitwood, Poliquin and Ridge contained in the report is not the type that would lead to discipline and as such the report does not fall within the 2702(1)(B)(5) exception. The petitioners point to the fact that no disciplinary action was taken by either the City or the Department upon receipt of

5

the report, and cite the deposition testimony of City Manager Gray and Chief Chitwood that the "alleged misconduct" did not, and was not of the sort that could, result in disciplinary action. In addition, the petitioners point to the parties' stipulation that Deputy Chief Ridge's transfer to the Criminal Investigations Division was a lateral transfer and did not constitute a demotion or other disciplinary action. They contend that the report does not contain complaints of dishonesty, ethical violations, abuse of position or other conduct for which formal disciplinary action can be taken within the Department and, therefore, argue that the report does not fall within the 2702(1)(B)(5) exception and must be released.

At the outset, the court notes that case law in Maine relating specifically to section 2702(1)(B)(5) is rather limited. The Law Court appears to have addressed that particular exception to the definition of a "public record" only once in *Lewiston Daily Sun v. Lewiston*, 596 A.2d 619 (Me. 1991). Further, this court has not found any case in Maine dealing with the meaning of the phrase "may result in disciplinary action," that might guide it in its decision. As a result, the court looks to the explicit language of the statute, to the limited case law interpreting that language, and to the intent of the Legislature in enacting it in order to determine whether the McClaran Report represents the type of personnel record protected by section 2702(1)(B)(5).

In *Lewiston Daily Sun*, a local newspaper requested the release of the name of a Lewiston police officer involved in the shooting of a suspect. The City of Lewiston denied the request, citing section 2702(1)(B)(5), on the ground that the records containing the officer's name "pertain[ed] to an identifiable employee of the City," and "contain 'information ... that may result in disciplinary action.'" *Lewiston Daily Sun*, 596 A.2d at 621. The court went on to say that "[i]t is evident on the face of section 2702 that the legislature believed the public interest is best served by protecting municipal employees from public disclosure of any of their personnel

6

records except the final written report of any disciplinary action taken against them. Section 2702 gives that protection to the police officer who is the subject of the ongoing disciplinary investigations of the ... incident." *Id.*

As the language in *Lewiston Daily Sun* and section 2702 make clear, the Legislature, in drafting that exception, was specifically interested in protecting municipal employees from the public disclosure of information that may potentially subject them to disciplinary investigations and/or sanctions. The statutory language suggests that, when conduct is sufficiently serious to warrant a disciplinary investigation, information about that conduct will only be made accessible to the public once it has been thoroughly investigated and the veracity of the report confirmed. Public disclosure of unsubstantiated accusations of serious misconduct has the potential to permanently damage the reputation and credibility of a municipal employee. Section 2702 protects that information and the municipal employee while it undergoes internal scrutiny and consideration. When, however, misconduct is confirmed and proves serious enough to warrant discipline, the Legislature has ensured the public's right to know about it. In this way, the statute balances "the public interest in open access to public records" and the public interest "in preventing unfair prejudice to public employees." *Id.* at 622.

Although the "complaints" contained in the McClaran Report regarding Chief Chitwood, Attorney Poliquin, and Deputy Chief Ridge are "serious" in that disclosure of them may affect those individuals' reputation and credibility in the community at large, the court finds that the alleged misconduct at issue in this case is not of the sort contemplated by section 2702(1)(B)(5). The parties have stipulated that the report was "commissioned" in connection with the Department's desire to review and remedy departmental conditions and procedures that may have led to accusations of civil rights violations and to public disquiet. Both the McClaran

Report and the review by the FDOJ were conducted for the purpose of reviewing and improving departmental practices and procedures in response to the controversy that befell the Department in 2001 and 2002. The reviews conducted by Dr. McClaran and the FDOJ were not aimed at ferreting out misconduct or taking disciplinary action. The McClaran Report was an information-gathering mechanism. Further, by City Manager Gray and Chief Chitwood's own admissions, none of the alleged "misconduct" by Portland Police Officials constituted conduct of the sort that could or did lead to a disciplinary investigation, much less disciplinary action. As such, the report and the anonymous comments by police officers contained within it does not constitute a "confidential record" excepted from disclosure under the FOAA by section 2702(1)(B)(5).

    (2)    Section 2702(1)(B)(2)

The respondent argues that, when read in connection with section 2702(1)(B)(5), section 2702(1)(B)(2) reveals a legislative desire to protect the privacy of public sector employees with respect to potentially damaging accusations relating to their job performance. Because neither Dr. McClaran nor the police officers who participated in interviews with him are in a position to conduct "performance evaluations" of Portland Police officials, the respondent does not argue that the report falls squarely within the section 2702(1)(B)(2) exception. Instead, it argues that when information could potentially damage an individual's reputation and "right to privacy," Maine's exceptions to the Act's mandate of disclosure protects that information. Because the McClaran Report is in fact not a "performance evaluation" or a "personal reference", the court concludes that it is not excepted under section 2702(1)(B)(2). *See Moffett v. City of Portland*, 400 A.2d 340, 348 (Me. 1979) (stating that "a strict construction of any exceptions to the required public disclosure" is necessary if the purposes of the Act are to be honored)).

8

The respondent also argues that the McClaran Report contains information that would have justified an Executive Session and, therefore, its contents need not be disclosed even though no Executive Session was ever called to discuss the report.[3] The respondent asserts that the report includes matters that, if discussed publicly, would "cause damage to the reputation" of the Portland Police Officials and is the sort of information the Legislature intended to except from disclosure. The court disagrees.

Although discussions in an Executive Session are not subject to public disclosure,[4] the Executive Session law does not apply to this case. Assuming *arguendo*, but without deciding, that the McClaran Report would have justified an Executive Session, none was ever called. Section 405 does not provide that a public body or agency may only discuss sensitive personnel issues in Executive Session. The law merely provides that an Executive Sessions *may* be called in certain, limited circumstances. *See* 1 M.R.S.A. § 405. It is only when such a session is called that the proceedings are private. Because no such session was called in this case, the respondent may not rely upon the Executive Session exception to shield the contents of the report from public disclosure. In fact, section 405 itself provides that Executive Sessions "shall not be used to defeat the purposes of" the FOAA. *Id.* at § 405(1).

---

[3] When an Executive Session is called, the content of the discussion that takes place during that session is not subject to release to the public except at the request of the person being investigated or charged. *See* 1 M.R.S.A. §§ 403 & 405(6). Matters for which Executive Sessions may be held pursuant to section 405 include:

> Discussion or consideration of the employment, appointment, assignment, duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions:
>> (1) An executive session may be held only if public discussion could be reasonably expected to cause damage to the reputation or the individual's right to privacy would be violated;

1 M.R.S.A. § 405(6)(A)(1).

[4] *See* 1 M.R.S.A. § 403.

III.    Implied Contract to Disclose

Because the court concludes that the McClaran Report is a public record subject to public access and disclosure under the FOAA, it does not need to reach the petitioners' claim that the respondent breached an implied contract to provide a copy of the report. However, even if the report was not an accessible public record, the claim of an implied contract is not sustainable on this 80B record. The petitioners have not established that they provided some consideration to the respondent, either at the respondent's request or with its knowledge and consent, under circumstances that make it reasonable for the petitioners to expect that they would receive a copy of the report.

IV.    Redaction of Report

Because the McClaran Report is a discloseable public record, the court declines to grant the respondent's request to redact portions of it. However, because of the likelihood that the value to the respondent of an appeal of this decision to the Law Court would be largely lost were the report released prior to the final resolution of any such appeal, the court does grant the respondent's request that the McClaran Report remain under court seal pending any appeal of this Decision and Order or, in the absence of an appeal, the expiration of any time limits for the taking thereof.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference.

Dated:  December 13, 2004

_____
Justice, Superior Court

10

Date Filed __03-10-2003__  __Cumberland__  Docket No. __AP-03-21__
                              County

Action __80B Appeal__

PORTLAND POLICE BENEVOLENT                    CITY OF PORTLAND
ASSOCIATION

MAINE ASSOCIATION OF POLICE

                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John G. Richardson, Jr., Esq. (Bar #7144) | Gary Wood Esq. (City of Portland) |
| Daniel R. Felkel, Esq. (Bar #6954) | Corporation Counsel |
| Troubh, Heisler & Piampiano | 389 Congress Street |
| 511 Congress Street | Portland, Maine 04101-3509 |
| P.O. Box 9711 | (207) 874-8480 |
| Portland, ME 04104 | |
| (207) 780-6789 | |

| Date of Entry | |
|---|---|
| **2003** | |
| March 10<br>"<br>" | Recieved 03-10-03.<br>Summary Sheet filed.<br>80B Appeal with Exhibits A-C filed. |
| Mar. 11 | On 3-11-03.<br>Briefing schedule mailed. Plaintiff's brief and record due 4-21-03 |
| Mar. 20 | Received 03-20-03.<br>Acknowledgment of Receipt of Summons and Complaint filed showing Service upon Defendant, City of Portland on 03-14-03 to Gary Wood Esq. |
| Apr. 3 | Received 04-03-03.<br>Defendant, City of Portland, Answer filed. |
| April 11<br>" " | Received 04-09-03:<br>Plaintiffs' Motion for Trial of the Facts filed.<br>Plaintiffs' Partial Record Pursuant to Rule 80B(e) with Exhibits A thru D filed. |
| June 9<br>" | Received 06-09-03.<br>Letter from Daniel R. Felkel, Esq. confirming 06-04-03 conversation re status of case. Plaintiff's attorney has filed Motion for Finding of Facts. Parties in case are trying to work out stipulation of facts so matter can be presented to a Justice for decision. Asks Court to arrange a conference as Attorney Felkel believes parties would benefit from a conference with the Court. |
| Jun. 30 | Received 06-30-03:<br>Scheduling Order filed. (Humphrey, J.).<br>On June 23, 2003, the parties appeared before the Court for a Scheduling Conference in this matter. After discussion, the Following deadlines are entered upon agreement of the parties: 1. The Cour will initally proceed<br>continued to next page.............. |